Ronald W. COUTTS, Sr., Petitioner-Appellant,

v.

WISCONSIN RETIREMENT BOARD, Respondent-
Respondent-Petitioner,

CITY OF RACINE, Respondent.

Byron Des JARLAIS, Petitioner-Respondent,

v.

WISCONSIN RETIREMENT BOARD, Respondent-Appellant-
Petitioner.

Supreme Court

*Nos. 95–1905, 95–2228. Oral argument January 27,
1997.—Decided May 22, 1997.*

(Also reported in 562 N.W.2d 917.)

For the respondent-respondent/appellant-petitioner the cause was argued by *L. Jane Hamblen*, assistant attorney general, with whom on the briefs was *James E. Doyle*, attorney general.

For the petitioner-appellant there was a brief by *Bruce F. Ehlke* and *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer*, Madison and oral argument by *Bruce F. Ehlke*.

For the petitioner-respondent there was a brief by *Lester A. Pines, Cheryl Rosen Weston* and *Cullen, Weston, Pines & Bach*, Madison and oral argument by *Lester Pines*.

¶ 1. ANN WALSH BRADLEY, J. The Wisconsin Retirement Board ("the Board") seeks review of a

published decision of the court of appeals,[1] which held that the Board is not statutorily authorized to reduce the duty disability benefits of Ronald W. Coutts, Sr. and Byron Des Jarlais with worker's compensation benefits previously paid to them. The Board argues that the court of appeals erred because the statute in question requires an offset of duty disability benefits with all worker's compensation payments, regardless of when the worker's compensation payments are made. We conclude that the statute unambiguously mandates an offset of duty disability benefits only with worker's compensation payments paid after the duty disability benefit payments commence. Accordingly, we affirm the decision of the court of appeals.

I.

¶ 2. The parties have stipulated to the relevant facts:

### Ronald W. Coutts, Sr.

¶ 3. Ronald W. Coutts, Sr. was employed as a City of Racine firefighter, and was therefore a "protective occupation participant" for purposes of the Wisconsin Retirement System (WRS). *See* Wis. Stat. § 40.02(48) (1995–96).[2] In August 1988, Coutts suffered an injury to his right shoulder while fighting a fire. Following surgery on the shoulder and a period of physical therapy, Coutts returned to light duty employment at the Racine Fire Department in January 1989.

---

[1] *Coutts v. Wisconsin Retirement Bd.*, 201 Wis. 2d 178, 547 N.W.2d 821 (Ct. App. 1996) (consolidating Coutts' and Des Jarlais' cases).

[2] Unless otherwise indicated, all future statutory references are to the 1995–96 volume.

However, the permanent physical limitations resulting from the shoulder injury eventually forced Coutts to retire. His last day on the Fire Department payroll was September 30, 1989.

¶ 4. Following his injury, Coutts filed a claim for permanent partial disability benefits pursuant to the Worker's Compensation Act, Chapter 102, Wis. Stat.[3] In April 1989, the Worker's Compensation Division of the Department of Industry, Labor and Human Relations (DILHR) determined that Coutts was entitled to permanent partial disability benefits. The permanent partial disability benefits were paid at a rate of $524.33 per month, effective January 7, 1989. In January 1990, Coutts received the last $524.33 full monthly payment of permanent partial disability benefits, and in February 1990, he received a final payment of $101.88.

¶ 5. Coutts also applied for duty disability benefits under Wis. Stat. § 40.65.[4] In May 1989, the Department of Employe Trust Funds (DETF) advised Coutts that he was eligible to receive duty disability benefits. When Coutts left the payroll of the Fire Department, he began receiving § 40.65 duty disability benefits.

---

[3] Coutts also applied for and received worker's compensation temporary total disability benefits.

[4] Section 40.65(4) provides:

> A protective occupation participant is entitled to a duty disability benefit as provided in this section if:
> (a) The employe is injured while performing his or her duty or contracts a disease due to his or her occupation;
> (b) The disability is likely to be permanent; and
> (c) 1. The disability causes the employe to retire from his or her job;
> 2. The employe's pay or position is reduced or he or she is assigned to light duty. . . .

¶ 6. The DETF reduced Coutts' § 40.65 duty disability benefits each month by $524.33, which was the monthly amount of worker's compensation permanent partial disability benefits that he was receiving at the time.[5] The net result was that Coutts' monthly combination of duty disability and worker's compensation benefits were the same as if he received duty disability benefits alone. However, the monthly $524.33 reduction in duty disability benefits continued even after Coutts stopped receiving worker's compensation benefits in February 1990. The DETF based this continued

---

[5] *See* Wis. Stat. § 40.65(5)(b), providing in part:

The Wisconsin retirement board shall reduce the amount of a participant's monthly benefit under this section by the amounts under subds. 1. to 6.,. . . . The Wisconsin retirement board may assume that any benefit or amount listed under subds. 1. to 6. is payable to a participant until it is determined to the board's satisfaction that the participant is ineligible to receive the benefit or amount. . . .

1. Any OASDHI benefit payable to the participant or the participant's spouse or a dependent because of the participant's work record.

2. Any unemployment compensation benefit payable to the participant because of his or her work record.

3. Any worker's compensation benefit payable to the participant, including payments made pursuant to a compromise settlement under s. 102.16(1). A lump sum worker's compensation payment or compromise settlement shall reduce the participant's benefit under this section in monthly amounts equal to 4.3 times the maximum benefit which would otherwise be payable under ch. 102 for the participant's disability until the lump sum amount is exhausted.

4. Any disability and retirement benefit payable to the participant under this chapter [40], or under any other retirement system, that is based upon the participant's earnings record and years of service. . . .

5. All earnings payable to the participant from the employer under whom the duty disability occurred.

6. All earnings payable to the participant from an employer, other than the employer under whom the duty disability occurred, and all income from self-employment. . . .

duty disability reduction on the worker's compensation payments that Coutts had received in the months *prior* to the commencement of duty disability benefits. As such, after his worker's compensation benefits ceased in February 1990, Coutts received $524.33 less per month in aggregate benefits than he received in the immediately preceding months.

¶ 7. In a letter sent to the DETF in August 1990, Coutts objected to the offsets against duty disability benefits occurring after his worker's compensation benefits ended. The DETF responded that duty disability benefits are to be reduced by all worker's compensation benefits received for the same disability injury, regardless of whether the worker's compensation payments are made before or after the commencement of duty disability benefits. Coutts appealed the DETF's determination to the Board. *See* § 40.03(8)(f).

¶ 8. The Board, in a final decision and order dated September 15, 1994, concluded that the plain language of § 40.65(5)(b)3 requires an offset of all worker's compensation payments against § 40.65 duty disability benefits, regardless of the timing of the worker's compensation benefits payments.[6] Coutts filed a petition for certiorari review in the Circuit Court for Dane County, Angela Bartell, Judge.

¶ 9. The circuit court determined that § 40.65(5)(b)3 is ambiguous. However, according to the circuit court, other provisions in § 40.65, as well as the legislative history, evince a broad legislative intent to offset duty disability payments with other sources of income, without regard to the time that the duty disability payments commence. Determining that the

---

[6] The Board's final decision and order adopted the proposed decision and order of the hearing examiner.

Board's interpretation of § 40.65 was consistent with the legislative intent, the circuit court affirmed the Board's decision. Coutts appealed. The court of appeals reversed, concluding that the statute is unambiguous and does not authorize the DETF to reduce § 40.65 duty disability benefits with previously paid worker's compensation benefits. The Board petitioned this court for review.

## Byron L. Des Jarlais

¶ 10. Byron L. Des Jarlais was employed as a deputy sheriff for Vilas County. In 1988, Des Jarlais suffered a work-related back injury for which he received both temporary total disability and permanent partial disability benefits under the Worker's Compensation Act. Des Jarlais received a total of $8,190 in permanent partial disability payments, with the final payment being made in December 1988.[7]

¶ 11. After aggravating his back injury while on the job, Des Jarlais applied for § 40.65 duty disability benefits in April 1991. The DETF approved his application, and duty disability payments commenced in August 1991. The DETF reduced Des Jarlais' monthly duty disability payment by $503.10 until the amount deducted equaled the $8,190 in permanent partial disability payments that Des Jarlais had received through December 1988.[8]

---

[7] The permanent partial disability was computed as 70 weeks at $117 per week, for a total of $8,190.

[8] In 1993, Des Jarlais received an additional permanent partial disability award of $587.33, which the DETF deducted from his monthly duty disability check. Because the additional $587.33 of worker's compensation was paid after the commencement of duty disability benefits, Des Jarlais does not dispute that the DETF properly reduced his duty disability benefits by

662

¶ 12. The Board rejected Des Jarlais' claim that his disability benefits should not be reduced by the worker's compensation paid nearly three years prior to the commencement of duty disability benefits. Des Jarlais appealed to the Circuit Court for Dane County, Michael Nowakowski, Judge, which ruled in his favor. The circuit court concluded that § 40.65 unambiguously precluded the DETF from reducing duty disability benefits with previously received worker's compensation benefits. The court of appeals affirmed the decision of the circuit court, and the Board petitioned this court for review.

## II.

¶ 13. The sole question before this court is whether the phrase "any worker's compensation benefit payable" in § 40.65(5)(b)3 authorizes the Board to reduce a WRS participant's duty disability benefits with worker's compensation benefits paid prior to the commencement of duty disability benefits. Generally, the interpretation of a statute is a question of law reviewed by this court under a *de novo* standard, without deference to the decisions of the court of appeals, circuit court, or administering agency. *State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 699, 517 N.W.2d 449 (1994). In certain instances, however, we will refrain from substituting our interpretation of a statute for that of the agency charged with administering the statute. An agency's interpretation of a statute is reviewed under one of three standards: *de novo*, "due weight" deference, or "great weight" deference. *Sauk*

---

that amount. We therefore do not address the offset of the additional $587.33.

663

*County v. WERC*, 165 Wis. 2d 406, 413–14, 477 N.W.2d 267 (1991).

■

¶ 14. An agency's interpretation of a statute will be reviewed *de novo* if any of the following are true: 1) the issue before the agency is clearly one of first impression;[9] 2) a legal question is presented and there is no evidence of any special agency expertise or experience;[10] or 3) the agency's position on an issue has been so inconsistent that it provides no real guidance.[11] Under *de novo* review, the agency's interpretation is given no weight. *William Wrigley, Jr. Co. v. Wisconsin Dep't of Revenue*, 160 Wis. 2d 53, 71, 465 N.W.2d 800 (1991), *rev'd on other grounds by Wisconsin Dep't. of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992). We conclude that *de novo* review is appropriate in these cases.

¶ 15. These cases are analogous to *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 493 N.W.2d 68 (1992). At issue in *Kelley* was the Department of Industry, Labor and Human Relations' (DILHR) interpretation of the phrase "equivalent employment position" in the Family and Medical Leave Act (FMLA), Wis. Stat. § 103.10(8)(a)2. This court concluded that *de novo* review was appropriate, because the meaning of the statutory language was a question of first impression with respect to which DILHR had no experience or

[9] *See Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 244–45, 493 N.W.2d 68 (1992).

[10] *See William Wrigley, Jr. Co. v. Wisconsin Dep't of Revenue*, 160 Wis. 2d 53, 71, 465 N.W.2d 800 (1991), *rev'd on other grounds by Wisconsin Dep't. of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214 (1992).

[11] *See Marten Transport, Ltd. v. DILHR*, 176 Wis. 2d 1012, 1018–19, 501 N.W.2d 391 (1993).

expertise. *Kelley*, 172 Wis. 2d at 245. The *Kelley* court based its conclusion on the fact that DILHR had adopted no administrative rules interpreting the meaning of the phrase at issue in that case, and that "the hearing examiner relied on no precedent and had no rules to aid him in arriving at his conclusion. . . ." *Id.*

¶ 16. For purposes of the instant cases, the Administrative Code is devoid of rules interpreting the phrase "any worker's compensation benefit payable," and there is no evidence in the record that the Board has ever considered whether § 40.65(5)(b)3 compels an offset of previously paid worker's compensation benefits against presently payable duty disability benefits. As in *Kelley*, in neither of the present cases did the hearing examiners rely on administrative rules or precedent in reaching the conclusion that the phrase "any worker's compensation benefit payable" includes worker's compensation benefits paid prior to the commencement of duty disability benefits. We therefore conclude that the issue presented in these cases is one of first impression in which the Board has no special experience or expertise, and that *de novo* review of the Board's interpretation of the phrase "any worker's compensation benefit payable" is appropriate.

¶ 17. We find unpersuasive the Board's citation to three instances in which it has applied § 40.65(5)(b)3 to offset duty disability benefits with previously paid worker's compensation benefits. Two of the cases cited by the Board are the very cases before this court. The third is a decision by the Board issued on the same day as its decision on Des Jarlais' claim.[12] As such, all three cases are irrelevant to the issue of whether the mean-

---

[12] *Feiereisen v. Wisconsin Retirement Board*, No. 95-CV–0022 (Dane County, Wis. Cir. Ct. Aug. 22, 1995).

ing of § 40.65(5)(b)3 was a question of first impression for the Board when it rendered decisions on Coutts' and Des Jarlais' claims.

¶ 18. Having determined the appropriate standard of review, we turn next to interpreting the statutory provision at issue in these cases. When interpreting a statute, this court seeks to identify and effectuate the intent of the legislature. *Stockbridge School Dist. v. DPI*, 202 Wis. 2d 214, 219, 550 N.W.2d 96 (1996). We begin by considering the words of the statute. If the statutory text is clear and unambiguous on its face, we need not look further. *Stockbridge*, 202 Wis. 2d at 220. If the language is ambiguous, we will then construe the statute by examining its history, context, subject matter, scope, and object. *Id.*

¶ 19. For purposes of our ambiguity analysis, the relevant portion of § 40.65(5) provides:

> (b) The Wisconsin retirement board shall reduce the amount of a participant's monthly benefit under this section by the amounts under subds. 1. to 6. . . .
>
> > 3. *Any worker's compensation benefit payable to the participant. . . .*

(Emphasis added.) The Board, Coutts, and Des Jarlais agree that the language at issue has a clear meaning. However, Coutts and Des Jarlais view the statute as unambiguously supporting their position that duty disability benefits cannot be reduced by previously paid worker's compensation benefits, whereas the Board contends that the statute clearly sustains the opposite proposition.

¶ 20. Language is ambiguous if it may be reasonably understood to have more than one meaning. *State*

*ex rel. Girouard v. Circuit Court for Jackson County*, 155 Wis. 2d 148, 155, 454 N.W.2d 792 (1990). However, a statute is not rendered ambiguous merely by virtue of the parties' disagreement over its meaning. *Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 592, 527 N.W.2d 301 (1995).

¶ 21. The word "payable" is the key to interpreting this statute.[13] Because the word is not defined in the statute, we look first to dictionary definitions of "payable."[14] Payable is defined as:

> Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but, when used without qualification, term normally means that the debt is payable at once, as opposed to "owing."

Black's Law Dictionary 1128 (6th ed. 1990). *See also* Random House Unabridged Dictionary 1424 (2nd ed. 1993) ("payable" means "1. to be paid; due").

---

[13] The Board incorrectly focuses on the word "any" in the § 40.65(5)(b)3 phrase "any worker's compensation benefit." The statute's use of the word "payable" modifies and restricts the scope of the phrase "any worker's compensation benefit." This fact may be illustrated by the phrase "any automobile," which describes a larger universe than the phrase "any automobile *that is red*."

[14] The need to resort to a dictionary for the definition of statutory term is not a basis for determining that the term is ambiguous. *See State ex rel. Girouard v. Circuit Court for Jackson County*, 155 Wis. 2d 148, 156, 454 N.W.2d 792 (1990); *State ex rel. Smith v. City of Oak Creek*, 139 Wis. 2d 788, 798 n.6, 407 N.W.2d 801 (1987).

¶ 22. These definitions demonstrate that the term "payable" refers to sums presently owing or to be remitted in the future. The definitions do not support the proposition that the word "payable" includes sums that have been remitted in the past. It is axiomatic that a sum which is "paid" is no longer "payable." We therefore conclude that § 40.65(5)(b)3 is unambiguous, and does not authorize the Board to reduce § 40.65 duty disability benefits with worker's compensation benefits paid prior to the commencement of duty disability benefits.

¶ 23. Our inquiry could end with the determination that § 40.65(5)(b)3 is unambiguous. Yet, in our quest to identify and give effect to the legislature's intent, we may assume solely for the sake of the inquiry that the statutory language is ambiguous. Even if the language is ambiguous, which it is not, there is strong extrinsic evidence that the legislature did not intend that the term "payable" in § 40.65(5)(b)3 include worker's compensation paid prior to the commencement of duty disability benefits.

¶ 24. When construing a statute, we examine the language in question in the context of the statute as a whole. *See General Castings Corp. v. Winstead*, 156 Wis. 2d 752, 758, 457 N.W.2d 557 (Ct. App. 1990), citing *Falkner v. Northern States Power Co.*, 75 Wis. 2d 116, 124, 248 N.W.2d 885 (1977). Examining § 40.65 as a whole, we note that the term "payable" is used in each of the six § 40.65(5)(b) subsections describing the types of income that the Board shall deduct from monthly duty disability payments. When the same term is used repeatedly in a single statutory section, it is a reasonable deduction that the legislature intended that the term possess an identical meaning each time it

appears. *See Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 663, 539 N.W.2d 98 (1995).[15]

¶ 25. The Board asserts that the phrase "any worker's compensation benefit payable" calls for a reduction in duty disability benefits by any worker's compensation payments without regard to the timing of the payments. Yet, if we ascribe the same meaning to "payable" in the remaining § 40.65(5)(b) subsections dealing with other types of income, unreasonable and absurd constructions of the statute arise, a result to be avoided. *See Lake City Corp. v. City of Mequon*, 207 Wis. 2d 156, 163, 558 N.W.2d 100 (1997) ("It is also a fundamental rule of statutory construction that any result that is absurd or unreasonable must be avoided").

¶ 26. For example, if the Board's definition of "payable" is extended to § 40.65(5)(b)2, the phrase "any unemployment compensation benefit payable" would mandate a reduction in duty disability benefits by the amount of unemployment compensation received prior to the commencement of duty disability benefits. Such an offset would essentially effect a retroactive denial of unemployment compensation benefits, an anomalous result. Similarly, under the Board's conception of the word "payable," the phrase "all earnings payable" in §§ 40.65(5)(b)5 & 6 would authorize a reduction in duty disability benefits with employment earnings received prior to the commencement of duty disability payments. Such a construction is both unreasonable and unnecessary. The absurdities vanish under our determination that "payable" allows the reduction in duty

---

[15] *See also* Legislative Reference Bureau, *Wisconsin Bill Drafting Manual* 1997–1998 § 2.01(15)(a) (revised August 1996) (legislation "should use identical words for the expression of identical ideas to the point of monotony") (citation omitted).

disability only by contemporaneously received income described in § 40.65(5)(b).

¶ 27. The Board's belief that the word "paid" is subsumed within the statutory term "payable" is also belied by the legislature's creation of statutes using both words.[16] If the Board is correct that "paid" is a lesser included meaning of "payable," then the legislature has repeatedly engaged in the hollow gesture of using both terms in the same descriptive phrase. Such

---

[16] *See, e.g.*, Wis. Stat. § 59.64(4)(a) ("orders, scrip or certificates of indebtedness shall bear no interest if *paid or payable* within one month from date of issuance"); Wis. Stat. § 71.78(2) ("the department [of revenue] shall make available upon suitable forms prepared by the department information setting forth the net Wisconsin income tax, Wisconsin franchise tax or Wisconsin gift tax reported as *paid or payable* in the returns filed by any individual or corporation. . . ."); Wis. Stat. § 78.80(4) ("The department of revenue shall inform each requester of the amount *paid or payable* under ss. 78.01, 78.40 and 78.555. . . ."); Wis. Stat. § 102.835(1)(f) (" 'property' includes all tangible and intangible personal property and rights to that property, including compensation *paid or payable*. . . ."); Wis. Stat. § 108.04(2)(f) ("A[n unemployment compensation] claimant is ineligible to receive benefits for any week for which benefits are *paid or payable* because the claimant knowingly provided the department [of industry, labor and job development] with a false social security number"); Wis. Stat. § 139.02(2)(a) ("Each eligible producer [of fermented malt beverages] shall receive a credit in the amount of 50% of the tax *paid or payable* . . . on the first 50,000 barrels taxed . . . ."); Wis. Stat. § 632.32(5)(i)2 (authorizing automobile insurance policies that reduce uninsured and underinsured motorist coverage by "amounts *paid or payable* under any worker's compensation law"); Wis. Stat. § 812.30(7) (" 'Earnings' means compensation *paid or payable* by the garnishee for personal services . . . and includes periodic payments under a pension or retirement program") (emphasis added throughout).

a construction of the statute is at odds with the rule that effect must be given to each word of a statute if possible, so that no portion of the statute becomes superfluous. *See Lake City,* 207 Wis. 2d at 163; *State v. Petty,* 201 Wis. 2d 337, 355, 548 N.W.2d 817 (1996); *Ann M.M. v. Rob S.,* 176 Wis. 2d 673, 680, 500 N.W.2d 649 (1993). Because the two words can and should be given distinct meanings, we conclude that "paid" does not come within the meaning of "payable."

¶ 28. Contrary to the Board's assertions, the legislative history of § 40.65 offers little, if any, insight into the meaning to be given to the phrase "any worker's compensation benefit payable." The legislature enacted § 2, ch. 278, Laws of 1981, which created § 40.65, in order to correct perceived problems in the then existing system of benefits for protective occupation participants in the WRS. One of these problems was the phenomenon of "duplicate benefits" or "double dipping" caused by a lack of coordination between duty disability benefits and "other income replacement programs such as social security, worker's compensation, unemployment compensation, the state retirement system, etc." *See* Report of Joint Survey Committee on Retirement Systems 3, LRB–4909/1.

¶ 29. We agree with the court of appeals that the legislative history is equivocal on the issue of whether duty disability benefits are to be reduced by worker's compensation benefits received prior to the commencement of duty disability payments. *Coutts v. Wisconsin Retirement Bd.,* 201 Wis. 2d 178, 194–95, 547 N.W.2d 821 (Ct. App. 1996). While the legislative history may support the Board's position, the legislative history is just as supportive of the proposition that the legislature intended to address the "double dipping" problem by preventing the simultaneous receipt of income listed

in § 40.65(5)(b) and full duty disability benefits. Our interpretation of § 40.65(5)(b)3 effectuates that intent.

¶ 30. Finally, the Board contends that absurd results follow from the conclusion that duty disability payments cannot be reduced by worker's compensation benefits paid prior to the commencement of duty disability payments:

> The disabled participant who applied for and collected worker's compensation permanent partial disability benefits before applying for the sec. 40.65 duty disability benefits would be able to collect unreduced monthly duty disability benefits. An otherwise identically situated disabled participant who first established sec. 40.65 duty disability eligibility and then applied for and collected worker's compensation benefits would have those benefits offset against the duty disability. Thus, in the latter case, winning a worker's compensation proceeding or agreeing to a compromise settlement would not increase that participant's monthly income.

Petitioner's Brief at 25.

¶ 31. While we agree with the Board that its two hypothetical participants will receive different levels of monthly income, we cannot say that such a result is absurd. As the court of appeals noted, the participant who waits to apply for duty disability benefits gives up the opportunity to receive those benefits in the interim. *Coutts*, 201 Wis. 2d at 193. Thus, it appears that an injured employee has an incentive to apply for duty disability benefits without delay.

¶ 32. We recognize that in limited instances a participant may have an incentive to delay in applying for duty disability benefits. However, it appears to us that the unpredictability of workplace injury precludes most of the opportunity to engage in such strategizing.

More importantly, to the extent that the statute does leave room for strategizing by participants, the authority rests with the legislature, rather than this court, to change the meaning of the statute.

¶ 33. In summary, we conclude that § 40.65(5)(b)3 does not authorize the reduction of duty disability benefits with worker's compensation benefits paid prior to the commencement of duty disability payments. Our determination of the legislature's intent is based upon the plain meaning of the statute, and is supported by the context in which the language in question appears. Accordingly, we affirm the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.