Duane KUESTER, Petitioner-Appellant,†

v.

WISCONSIN RETIREMENT BOARD, Respondent-
Respondent.

Court of Appeals

*No. 03–0056. Submitted on briefs August 13, 2003.—*
*Decided December 23, 2003.*

2004 WI App 10

(Also reported in 674 N.W.2d 877.)

† Petition to review denied 4-20-04.

464

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Bruce F. Ehlke, Shneidman, Hawks & Ehlke, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *L. Jane Hamblen*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Lundsten, JJ.

¶ 1. VERGERONT, J. Duane Kuester, a retired firefighter, challenges the administrative rule the Wisconsin Retirement Board applied in determining that he was not entitled to receive duty disability benefits under WIS. STAT. § 40.65 (2001–02).[1] He contends WIS. ADMIN. CODE § ETF 52 is invalid because it is not authorized by statute and is inconsistent with § 40.65. Alternatively, he contends, even if the rule is valid, it was unlawfully applied to him retrospectively. The circuit court rejected these arguments and dismissed Kuester's petition for certiorari review of the Board's decision. We conclude the rule is valid and was lawfully applied to Kuester. We therefore affirm the circuit court's order of dismissal.

## BACKGROUND

*Statutory, Regulatory, and Case Law Background*

¶ 2. WISCONSIN STAT. § 40.65 establishes the duty disability program for protective occupation participants in the Wisconsin Retirement System, such as firefighters and police officers, who become injured while performing their duties.[2] Participants first applying for benefits after May 3, 1988, file an application

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

[2] "Protective occupation participant" is defined in WIS. STAT. § 40.02(48).

with the Department of Employee Trust Funds (DETF), which makes the initial determination of eligibility. Section 40.65(2)(b)1–3.[3] The Board is charged with determining the amount of the benefits and the effective date. Section 40.65(3).[4] The Board is also required by § 40.65(5)(b) to reduce the monthly duty disability benefits by certain other benefits payable to the participant.

[3] WISCONSIN STAT. § 40.65(2)(b)1–3 provide:

(b) 1. This paragraph applies to participants who first apply for benefits under this section on or after May 3, 1988.

2. An applicant for benefits under this section shall submit or have submitted to the department an application that includes written certification of the applicant's disability under sub. (4) by at least 2 physicians, as defined in s. 448.01 (5), who practice in this state and one of whom is approved or appointed by the department, and a statement from the applicant's employer that the injury or disease leading to the disability was duty-related.

3. The department shall determine whether or not the applicant is eligible for benefits under this section on the basis of the evidence in subd. 2. An applicant may appeal a determination under this subdivision to the department of workforce development.

[4] WISCONSIN STAT. § 40.65(3) provides:

(3) The Wisconsin retirement board shall determine the amount of each monthly benefit payable under this section and its effective date. The board shall periodically review the dollar amount of each monthly benefit and adjust it to conform with the provisions of this section. The board may request any income or benefit information, or any information concerning a person's marital status, which it considers to be necessary to implement this subsection and shall require a participant to submit a certified copy of his or her most recent state or federal income tax return. The board may terminate the monthly benefit of any person who refuses to submit information requested by the board or who submits false information to the board.

¶ 3. Prior to *Coutts v. Wisconsin Retirement Board*, 209 Wis. 2d 655, 562 N.W.2d 917 (1997), the Board followed a procedure whereby it reduced an individual's duty disability benefits by all worker's compensation benefits received by that person, including worker's compensation benefits received prior to the commencement of the disability benefits. This procedure was based on the Board's construction of WIS. STAT. § 40.65(5)(b)3, which required it to reduce monthly duty disability benefits by "any worker's compensation benefit payable to the participant." The supreme court in *Coutts* reached the same conclusion this court did, holding that "payable" unambiguously referred to sums presently owing or to be remitted in the future, and the statute therefore did not authorize the Board to reduce duty disability benefits based on worker's compensation benefits paid prior to the commencement of duty disability benefits. 209 Wis. 2d at 668, *aff'g* 201 Wis. 2d 178, 547 N.W.2d 821 (Ct. App. 1996).

¶ 4. Following the supreme court's decision in *Coutts*, WIS. ADMIN. CODE § ETF 52.10(1) was promulgated effective October 1, 1998:

(1) DEPARTMENT TO ESTABLISH. The department shall establish an effective date for duty disability benefits for each participant whose application for duty disability benefits is granted. Duty disability benefits are not retroactive. The effective date for duty disability benefits is the later of:

(a) The date the participant's application form was received as determined under s. ETF 52.06(2), ignoring any previous applications.

(b) The participant's qualifying date.

468

*Facts Related to Kuester*

¶ 5. Kuester began employment as a firefighter with the City of Menomonie in 1973 and was classified as a protective occupation participant. He suffered a work-related injury on July 3, 1997. After a period of medical treatment while on sick leave, he attempted to return to active duty on or about September 16, 1997, but was unable to do so. He returned to sick leave status, on which he remained until he retired, effective March 13, 1999.

¶ 6. Kuester received temporary total disability worker's compensation benefits from July 11, 1997, through March 14, 1998, when he reached a healing plateau. He then applied for permanent partial disability worker's compensation benefits. Because of a dispute concerning those benefits, he did not receive them until a settlement was approved on August 6, 1999. Until his retirement on March 13, 1999, Kuester continued to hold the position of lieutenant with the fire department and was paid at his full-time base rate through a combination of accumulated sick leave and temporary total disability benefits.

¶ 7. On March 12, 1998, Kuester applied for duty disability benefits under Wis. Stat. § 40.65. At his request, DETF cancelled this application. Kuester filed a new application on September 28, 1999, and was approved for benefits on December 29, 1999. DETF determined that Kuester became disabled within the meaning of the statute on September 19, 1997. It further determined, applying Wis. Admin. Code § ETF 52.10, that the effective date of the payment of his benefits under that statute was September 28, 1999, the date of his application following the one that he asked to have cancelled.

¶ 8. Kuester appealed DETF's decision to the Board, challenging the validity of WIS. ADMIN. CODE § ETF 52.10 and, alternatively, the rule's applicability to disabilities occurring before the effective date of the rule. The Board affirmed, concluding that the rule was valid and was consistent with *Coutts*. The Board also decided that the rule could properly be applied to Kuester because it was in effect on the date he filed his application and the date he met the criteria for a disability under WIS. STAT. § 40.65(4), which, the Board determined, was March 13, 1999, not September 19, 1997.[5]

¶ 9. Kuester petitioned for certiorari review of the Board's decision in the circuit court, and the circuit court affirmed the Board's decision.

## DISCUSSION

¶ 10. On appeal, we do not review the circuit court's decision, but, rather, we review the decision of the Board. *Klinger v. Oneida County*, 149 Wis. 2d 838, 845 n.6, 440 N.W.2d 348 (1989). We apply the same standard of review as did the circuit court. *State ex rel. Olson v. City of Baraboo Joint Review Bd.*, 2002 WI App 64, ¶ 8, 252 Wis. 2d 628, 643 N.W.2d 796. Our review is

---

[5] The Board adopted the proposed decision of the hearing examiner, with some amendments. The Board disagreed with the examiner's conclusion that Kuester met the statutory criteria for "disabled" in September 1997, and concluded instead that he did not meet the criteria until his retirement in March 1999. However, the Board noted, this disagreement did not affect the determination of the effective date of Kuester's benefits, which under the rule was based on the date of the filing of the application on September 28, 1999.

limited to determining: (1) whether the Board acted within its jurisdiction and authority; (2) whether the Board proceeded on a correct theory of law; (3) whether the Board's action was arbitrary, oppressive, or unreasonable; and (4) whether the evidence was such that the Board might reasonably have made the determination that it did. *Klinger*, 149 Wis. 2d at 843.

¶ 11. Kuester's challenges to the validity of WIS. ADMIN. CODE § ETF 52.10 and its application to him implicate the first three standards. We address first his contention that § ETF 52.10 is invalid. According to Kuester, the Board has no statutory authorization to promulgate rules relating to WIS. STAT. § 40.65 and, even if it does, this rule is inconsistent with § 40.65(4).

¶ 12. An administrative agency has only those powers that are expressly conferred or necessarily implied from the statutory provisions under which it operates. *Conway v. Board of the Police and Fire Comm'rs*, 2002 WI App 135, ¶ 7, 256 Wis. 2d 163, 647 N.W.2d 291. If an agency promulgates a rule that conflicts with an unambiguous statute, the agency has exceeded its authority and the rule is invalid. *Seider v. O'Connell*, 2000 WI 76, ¶¶ 26, 28, 236 Wis. 2d 211, 612 N.W.2d 659. In deciding whether an agency has exceeded its authority in promulgating a rule, we use a de novo standard of review. *Id.*, ¶ 25. As we do in construing all statutes, we look first to the statute's plain language, and if the language is unambiguous on its face, we apply that language to the facts at hand. *Columbus Park Hous. Corp. v. City of Kenosha*, 2003 WI 143, ¶ 10, 267 Wis. 2d 59, 671 N.W.2d 633.

¶ 13. WISCONSIN STAT. § 40.65(3) provides that the Board "shall determine the amount of each monthly benefit payable under this section and its effective date." WISCONSIN STAT. § 227.11(1)-(2)(a) provide:

**Extent to which chapter confers rule-making authority. (1)** Except as expressly provided, this chapter does not confer rule-making authority upon or augment the rule-making authority of any agency.

**(2)** Rule-making authority is expressly conferred as follows:

(a) Each agency may promulgate rules interpreting the provisions of any statute enforced or administered by it, if the agency considers it necessary to effectuate the purpose of the statute, but a rule is not valid if it exceeds the bounds of correct interpretation.

The Board thus has express statutory authority to promulgate rules on the determination of the amount of monthly benefits payable and the effective date. WISCONSIN ADMIN. CODE § ETF 52.10 does precisely that: it establishes the manner in which DETF is to determine the effective date of benefits for each application.

¶ 14. Kuester argues that the Board does not have authority to promulgate any rules under WIS. STAT. § 40.65(3) because only the Department of Workforce Development (DWD) is expressly granted rule-making authority under § 40.65. Section 40.65(2)(a) provides:

**(2)**(a) This paragraph applies to participants who first apply for benefits before May 3, 1988. Any person desiring a benefit under this section must apply to the department of workforce development, which department shall determine whether the applicant is eligible to receive the benefit and the participant's monthly salary. Appeals from the eligibility decision shall follow the procedures under ss. 102.16 to 102.26. If it is

472

determined that an applicant is eligible, the department of workforce development shall notify the department of employee trust funds and shall certify the applicant's monthly salary. If at the time of application for benefits an applicant is still employed in any capacity by the employer in whose employ the disabling injury occurred or disease was contracted, that continued employment shall not affect that applicant's right to have his or her eligibility to receive those benefits determined in proceedings before the department of workforce development or the labor and industry review commission or in proceedings in the courts. The department of workforce development may promulgate rules needed to administer this paragraph.

Kuester points out that there is no comparable specific grant of rule-making authority for the Board in the context of specifying its duties under § 40.65(3).

¶ 15. We do not find Kuester's argument based on WIS. STAT. § 40.65(2)(a) to be persuasive. Under that paragraph, DWD determines eligibility only for applicants who first apply before May 3, 1988, whereas after that date, DETF makes the determination as provided in § 40.65(2)(b). There is no express provision granting DETF authority to promulgate rules for the determinations it is charged with making under § 40.65(2)(b). It is not a reasonable reading of subsecs. (2) and (3) that the legislature intended that DWD have the authority to make rules for applications before May 3, 1988, but no agency has the authority to make rules for administering the provision of benefits for persons who apply after that date.

¶ 16. More importantly, Kuester's argument overlooks the plain language of WIS. STAT. § 227.11(2)(a). This statute unambiguously confers on the Board the authority to promulgate rules interpreting statutes it

administers or enforces if it considers that necessary to effectuate the purpose of the statute, as long as the rule is a correct construction of the statute. Without analyzing the language of § 227.11, Kuester asserts in general terms that it is "permissive, not mandatory; and . . . provide[s] only a limited authority to . . . notify the public, by promulgation of a rule, when it has interpreted a specific statutory provision in a particular way." We see scant relation between Kuester's description of § 227.11 and the pertinent language of that statute, and we therefore reject his construction.

■

¶ 17. Kuester also argues that WIS. ADMIN. CODE § ETF 52.10 is inconsistent with certain provisions in WIS. STAT. § 40.65. First, he points to § 40.65(4),[6] which establishes the eligibility criteria for duty disability benefits. Kuester contends that, because none of these criteria relate to the date of application, the legislature intended the effective date of benefits to be the date on which the eligibility criteria are met. We do not agree. If

---

[6] WISCONSIN STAT. § 40.65(4) provides:

 (4) A protective occupation participant is entitled to a duty disability benefit as provided in this section if:

 (a) The employee is injured while performing his or her duty or contracts a disease due to his or her occupation;

 (b) The disability is likely to be permanent; and

 (c) 1. The disability causes the employee to retire from his or her job;

 2. The employee's pay or position is reduced or he or she is assigned to light duty; or

 3. The employee's promotional opportunities within the service are adversely affected if state or local employer rules, ordinances, policies or written agreements specifically prohibit promotion because of the disability.

that had been the legislature's intent, there was no need to charge the Board with determining the effective date, as it plainly did in § 40.65(3).

¶ 18. Second, Kuester points to this language in WIS. STAT. § 40.65(2)(a):

> If at the time of application for benefits an applicant is still employed in any capacity by the employer in whose employ the disabling injury occurred or disease was contracted, that continued employment shall not affect that applicant's right to have his or her eligibility to receive those benefits determined in proceedings before the department of workforce development or the labor and industry review commission or in proceedings in the courts.

Kuester asserts that this shows that an individual may become entitled to receive benefits at a point earlier in time than that provided under WIS. ADMIN. CODE § ETF 52.10(1). However, para. (2)(a) applies only to applications filed before May 3, 1988, and the quoted language is not contained in para. (2)(b), which governs applications made after that date. Kuester does not explain how para. (2)(a) is relevant to determining whether § ETF 52.10 conflicts with statutory provisions governing applications filed after May 3, 1988. We therefore do not consider this argument further.

¶ 19. Kuester makes the additional argument that the Board in its decision erroneously read some statements from both the supreme court's and this court's decisions in *Coutts* as expressing the view that duty disability benefits are not retroactive. In any event, he asserts, those statements are dicta and the Board therefore erred in relying on them. The statements at issue were made in the context of both the supreme court and this court addressing the concerns of the Board that, if it could not reduce monthly duty

475

disability benefits by past worker's compensation benefits, a person who waited to apply for duty disability benefits until after receiving all worker's compensation benefits would have no reduction, whereas a person who applied for duty disability benefits while still receiving worker's compensation benefits would. *See Coutts*, 209 Wis. 2d at 672–73, 201 Wis. 2d at 193–94.[7]

---

[7] The statements at issue are:

> The WRB also argues that if it cannot reduce a participant's monthly duty disability benefit payment by past worker's compensation payments, then persons otherwise similarly situated who apply for duty disability benefits at different times would receive different benefit amounts. The problem with this argument is that these two hypothetical participants are not otherwise similarly situated. The participant who waits several months or years to apply for duty disability benefits will forego receiving those benefits during those months or years. Thus, an eligible participant has every incentive to apply for this benefit even if it is reduced partially or totally by worker's compensation or some other income or benefit. Duty disability benefits are not retroactive; it is not clear that in the long run, a person who waits to apply for duty disability benefits will be better off than someone who does not.

*Coutts v. Wisconsin Retirement Board*, 201 Wis. 2d 178, 193–94, 547 N.W.2d 821 (Ct. App. 1996) (footnote omitted).

> As the court of appeals noted, the participant who waits to apply for duty disability benefits gives up the opportunity to receive those benefits in the interim. Thus it appears that an injured employee has an incentive to apply for duty disability benefits without delay.

> We recognize that in limited instances a participant may have an incentive to delay in applying for duty disability benefits. However, it appears to us that the unpredictability of workplace injury precludes most of the opportunity to engage in such strategizing.

*Coutts v. Wisconsin Retirement Board*, 209 Wis. 2d 655, 672–73, 562 N.W.2d 917 (1997).

476

The Board responds that its decision correctly reads the statements in the two *Coutts* decisions to say that duty disability benefits are not retroactive. The Board also asserts that whether the statements are dicta is irrelevant because the Board could choose to promulgate a rule consistent with the statements even if they are dicta.

¶ 20. We agree with the Board that it is not relevant whether the statements are dicta and, therefore, we do not decide that question. As we have already concluded, the Board has the authority to promulgate a rule to interpret Wis. Stat. § 40.65(3). Of course, in order to be valid, the rule may not conflict with a binding court decision, but the rule need not be specifically required by a court decision. The proper question is whether Wis. Admin. Code § ETF 52.10 conflicts with the supreme court's decision in *Coutts*. We conclude there is no conflict.

¶ 21. Kuester also makes an argument that is essentially based on public policy: he contends it is against public policy to tie the effective date to the date of application because that may limit the amount of benefits for a participant solely because he or she did not understand the need to make an application to establish an effective date. However, the public policy judgment is for the Board to make within the parameters established by the legislature. We have already held that Wis. Admin. Code § ETF 52.10 does not conflict with the relevant statutes. In addition, the legislature expressly requires the Board to reduce monthly duty disability benefits by certain other "payable" benefits; and the supreme court has stated that the legislature enacted Wis. Stat. § 40.65 to correct, among other

problems, "duplicate benefits" caused by the lack of coordination between duty disability benefits and other income replacement programs. *Coutts*, 209 Wis. 2d at 671. Since *Coutts*, the reduction required by § 40.65(5)(b) can be made only for other benefits received while receiving duty disability benefits. *See id.* at 668. The Board could reasonably decide to tie the effective date to the date of application to avoid persons waiting until all other benefits had terminated before applying for duty disability benefits.

¶ 22. We next address Kuester's argument that, even if WIS. ADMIN. CODE § ETF 52.10 is valid, it was improperly applied to him because he became entitled to duty disability benefits on September 19, 1997, before the rule was promulgated. The Board agrees with Kuester's premise that an administrative rule may not be applied retrospectively; but, the Board asserts, § ETF 52.10 has not been applied retrospectively to Kuester because he did not meet the statutory criteria for benefits until March 13, 1999.

¶ 23. Other than assert that he was entitled to duty disability benefits as of September 19, 1997, Kuester does not develop an argument in this court explaining why the Board erred in determining the date was March 13, 1999. Accordingly, we accept the Board's determination that March 13, 1999, was the date on which Kuester met the statutory criteria for duty disability benefits and we conclude that the rule, effective October 1, 1998, was not retrospectively applied to him.

*By the Court.*—Order affirmed.