Barbara CAREY, Petitioner-Appellant,†

v.

WISCONSIN RETIREMENT BOARD,
Respondent-Respondent.

Court of Appeals

*No. 2006AP1233. Submitted on briefs October 9, 2006.
—Decided December 7, 2006.*

2007 WI App 17

(Also reported in 728 N.W.2d 22.)

† Petition to review filed.

374

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Bruce F. Ehlke, Hawks Quindel Ehlke & Perry, S.C.*, Madison.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Charlotte Gibson*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Dykman, Vergeront and Higginbotham, JJ.

¶ 1. VERGERONT, J.  The issue on this appeal is whether the Wisconsin Retirement Board correctly construed WIS. STAT. § 40.65(5)(b) (2003-04)[1] in determining Barbara Carey's duty disability benefits. The Board reduced those benefits by earnings and lump sum worker's compensation benefits she received after the effective date of her duty disability benefits. The circuit court upheld this decision and Carey appeals. She contends the Board's construction of the statute is incorrect because earnings and benefits may reduce duty disability benefits only if they are contemporaneously earned or accrue, and, she asserts, her earnings were earned and lump sum worker's compensation benefits accrued in the months before she received them. Giving the Board's construction of the statute due weight deference, we conclude it is reasonable to construe § 40.65(5)(b) to require reduction of duty disability benefits by earnings and worker's compensation benefits when they are received (subject to the lump sum provisions in subd. 3.), and that this construction comports with the purpose of the statute. We further conclude the construction proposed by Carey is not more reasonable. We therefore affirm.

## BACKGROUND[2]

¶ 2.  Carey was employed as a police officer for the City of Madison. She was therefore a "protective occupation participant" in the Wisconsin Retirement System, *see* WIS. STAT. § 40.02(48), and was covered by the duty disability program established in WIS. STAT.

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] The relevant facts are not disputed and we take them from the Board's findings.

§ 40.65.[3] After sustaining injuries to her right knee while on duty, she was assigned to light duty effective March 9, 1998.

¶ 3.  On July 13, 1998, Carey filed an application with the Department of Employee Trust Funds (DETF). DETF determined that she met the disability criteria of Wis. Stat. § 40.65 on March 9, 1998, and that her effective date for eligibility was July 13, 1998, the date of her application.[4] From July 13, 1998, until

---

[3] Wisconsin Stat. § 40.65(4) provides:

(4) A protective occupation participant is entitled to a duty disability benefit as provided in this section if:

(a) The employee is injured while performing his or her duty or contracts a disease due to his or her occupation;

(b) The disability is likely to be permanent; and

(c) 1. The disability causes the employee to retire from his or her job;

2. The employee's pay or position is reduced or he or she is assigned to light duty; or

3. The employee's promotional opportunities within the service are adversely affected if state or local employer rules, ordinances, policies or written agreements specifically prohibit promotion because of the disability.

[4] Wisconsin Stat. § 40.65(3) provides that the Wisconsin Retirement Board "shall determine the amount of each monthly benefit payable under this section and its effective date." After the supreme court decided *Coutts v. Wisconsin Retirement Board*, 209 Wis. 2d 655, 562 N.W.2d 917 (1997), the Board promulgated Wis. Admin. Code § ETF 52.10(1) (Jan. 2004), effective October 1, 1998, which provides that DETF is to establish the effective dates for duty disability benefits as either the date of receipt of the application or the date on which the participant became eligible for duty disability benefits, whichever is later. We upheld the validity of the rule in *Kuester v. Wisconsin Retirement Board*, 2004 WI App 10, ¶ 1, 269 Wis. 2d

October 5, 1998, Carey's last day of employment, Carey was in full-pay status. DETF offset the earnings she received in July, August, and September against her monthly duty disability benefits, resulting in no disability benefits for those months.[5]

¶ 4. Carey also applied for worker's compensation benefits. She informed DETF in her October 1998 Income Certification that she was not then receiving worker's compensation but a final disposition of permanent partial disability was pending.

¶ 5. DETF made two determinations on the amount of duty disability benefits due Carey, in October 1998 and thereafter, that are the subject of this appeal. In the first determination, DETF offset the amount of her duty disability benefits for October 1998 by the two pay checks she received in October. One of the pay checks was for work performed from September 20, 1998 to October 3, 1998. The other was for work performed October 4 and 5, plus payment for unused compensatory time and sick leave. In the second determination, DETF offset the lump sum worker's compensation benefits Carey received in November 1998 (representing the thirty-seven weeks that had elapsed since her worker's compensation eligibility date of March 8, 1998) against her duty disability benefits by reducing on a prorated

---

462, 674 N.W.2d 877. Although Carey's application was filed before the effective date of the rule, the Board informs us that it had been following the policy expressed in the rule since *Coutts*, and applied it to Carey. Carey does not challenge the determination of her effective date.

[5] WISCONSIN STAT. § 40.65(5)(a) provides that the amount of benefits, with certain exceptions, is either 80% or 75% of the participant's monthly salary adjusted as required by § 40.65(5)(b) and (6). Section 40.65(5)(b) is set forth at ¶ 6.

basis her duty disability benefits from February through October 1999.[6]

¶ 6. Carey appealed these determinations to the Board, as well as two later determinations confirming the calculation of these offsets. The Board affirmed DETF's determinations. The Board decided that, under WIS. STAT. § 40.65(5)(b), DETF had properly reduced the amount of Carey's duty disability payments by her earnings received in October 1998 and by the lump sum worker's compensation benefit. Section 40.65(5)(b) provides:

> (b) The Wisconsin retirement board shall reduce the amount of a participant's monthly benefit under this section by the amounts under subds. 1. to 6., except that the board may determine not to reduce a participant's benefit because of income related to therapy or rehabilitation. The Wisconsin retirement board may assume that any benefit or amount listed under subds. 1. to 6. is payable to a participant until it is determined to the board's satisfaction that the participant is ineligible to receive the benefit or amount, except that the department shall withhold an amount equal to 5% of the monthly benefit under this section until the amount payable under subd. 3. is determined.
>
> 1. Any OASDHI benefit payable . . . .
>
> 2. Any unemployment insurance benefit payable . . . .
>
> 3. Any worker's compensation benefit payable to the participant, including payments made pursuant to a compromise settlement under s. 102.16(1). A lump sum worker's compensation payment or compromise

---

[6] DETF also determined that the monthly payments of worker's compensation benefits Carey began receiving in December 1998 would be offset against her duty disability benefits, but Carey did not appeal that determination.

settlement shall reduce the participant's benefit under this section in monthly amounts equal to 4.3 times the maximum benefit which would otherwise be payable under ch. 102 for the participant's disability until the lump sum amount is exhausted.

4. Any disability and retirement benefit payable . . . .

5. All earnings payable to the participant from the employer under whom the duty disability occurred.

6. All earnings payable . . . from [other] employer[s] . . . .

The Board read *Coutts v. Wisconsin Retirement Board*, 209 Wis. 2d 655, 562 N.W.2d 917 (1997), to hold that the statutorily specified sums are "payable" when they are received and thus it is proper to offset them when they are received against the duty disability benefits.

¶ 7. Carey petitioned for certiorari review of the Board's decision pursuant to WIS. STAT. § 40.08(12). She contended her earnings and the lump sum worker's compensation benefits were "payable" prior to the commencement of her duty disability benefits and, therefore, under *Coutts* they could not be offset against her duty disability benefits.

¶ 8. Giving the Board's construction of the statute due weight deference, the circuit court held it was a reasonable construction and Carey's was not more reasonable. The court also rejected Carey's argument that the Board's construction allowed double offsets. Accordingly, the circuit court ordered that the writ of certiorari be quashed.

## DISCUSSION

¶ 9. On appeal, Carey renews her argument that the Board's construction of "payable" is unreasonable.

She asserts that "payable" means when earnings are earned or benefits accrue, not when they are received, as the Board decided. She finds support for her position in *Coutts*, disputing the Board's reading of that case.

¶ 10.   Because this is an action for certiorari review, we review the Board's decision, not that of the circuit court. *Kuester v. Wisconsin Ret. Bd.*, 2004 WI App 10, ¶ 10, 269 Wis. 2d 462, 674 N.W.2d 877. Our review is limited to determining whether the agency kept within its jurisdiction, applied a correct theory of law, did not act arbitrarily, and made a reasonable determination under the evidence presented. *Id.* Carey's appeal focuses on whether the Board applied a correct theory of law.

¶ 11.   Because the construction of a statute presents a question of law, we generally review issues of statutory construction de novo. *Coutts*, 209 Wis. 2d at 663. However, in certain situations we may give an agency's construction of a statute either due weight or great weight deference. *Id.* The Board argues that its construction of the statute is entitled to due weight deference, and Carey does not dispute this.[7] We will therefore apply this level of deference, according to which we do not overturn a reasonable agency decision that comports with the purpose of the statute unless we determine that there is a more reasonable interpretation available. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 286–87, 548 N.W.2d 57 (1996).

[7] Due weight deference is appropriate when the agency has some experience in the area but has not developed the expertise that necessarily places it in a better position than the court to make judgments regarding the interpretation of the statute. *UFE, Inc. v. LIRC*, 201 Wis. 2d 274, 286–87, 548 N.W.2d 57 (1996).

381

¶ 12.   We begin with a discussion of *Coutts*, which construed the word "payable" in WIS. STAT. § 40.65(5)(b), although in a different factual context. In *Coutts*, 209 Wis. 2d at 660–61, DETF reduced the employees' duty disability benefits by worker's compensation payments they received before their duty disability benefits began. The issue was "whether the phrase 'any worker's compensation benefit payable' in § 40.65(5)(b)3. authorizes the Board to reduce . . . duty disability benefits with worker's compensation benefits paid prior to the commencement of duty disability benefits." *Id.* at 663. The court concluded that the phrase is unambiguous and "payable" refers to "sums presently owing or to be remitted in the future." *Id.* at 668. It therefore concluded that § 40.65(5)(b)3. does not authorize reduction of duty disability benefits by "worker's compensation benefits paid prior to commencement of duty disability benefits." *Id.*

¶ 13.   In rejecting the Board's argument that "payable" includes "paid," the *Coutts* court discussed the absurd results of such a construction and stated:   "The absurdities vanish under our determination that 'payable' allows the reduction in duty disability benefits only by *contemporaneously received* income described in [WIS. STAT.] § 40.65(5)(b)." *Id.* at 669–70 (emphasis added).

¶ 14.   Although the *Coutts* court decided the statute was unambiguous, it considered legislative history. The court concluded the legislative history was equivocal on the issue of whether duty disability benefits are to be reduced by worker's compensation benefits received prior to the commencement of duty disability benefits:

> While the legislative history may support the Board's position, the legislative history is just as supportive of the proposition that the legislature intended to address the "double dipping" problem by preventing the simul-

taneous receipt of income listed in [Wɪs. Sᴛᴀᴛ.] § 40.65(5)(b) and full duty disability benefits. Our interpretation of § 40.65(5)(b)3 effectuates that intent.

*Id.* at 671–72.

¶ 15. The Board reads *Coutts* to approve of making reductions when the worker's compensation benefits or other items designated in Wɪs. Sᴛᴀᴛ. § 40.65(5)(b) are received. The Board points to the phrase "contemporaneously received," (*see supra* para. 13), and to the dictionary definitions of "payable" the court cited approvingly:

> Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. Payable may therefore signify an obligation to pay at a future time, but, when used without qualification, [the] term normally means that the debt is payable at once, as opposed to "owing."

*Id.* at 667 (quoting Bʟᴀᴄᴋ's Lᴀᴡ Dɪᴄᴛɪᴏɴᴀʀʏ 1128 (6th ed. 1990)). The Board asserts that the *Coutts* court's construction of "payable" is inconsistent with construing "payable" to mean when a wage is earned or a benefit is accrued.

¶ 16. Carey's position is that *Coutts* does not require the Board's construction of the term "payable." Instead, Carey asserts, the word "contemporaneously" in the italicized phrase (*supra* para. 13) shows the *Coutts* court meant that the designated sums should be deducted from duty disability payments only when they are earned or accrue "contemporaneously" with the duty disability payments. Carey argues that it is unfair to reduce her duty disability benefits by earnings and worker's compensation benefits that were earned or that accrued for an earlier time period because that

deprives her of the benefit of the employment compensation she earned and the worker's compensation benefits to which she was entitled before she began receiving duty disability benefits.[8]

■

¶ 17.   We conclude the Board's construction of WIS. STAT. § 40.65(5)(b)3. and 5. is reasonable, comports with the purpose of § 40.65(5)(b), and is consistent with *Coutts*. The statutory language requires the reduction of the duty disability benefits by the specified "payable" benefits and earnings and makes no reference to when they accrue or are earned. Although wages are earned when work is performed, they are not necessarily "payable" when they are earned. According to the dictionary definitions the *Coutts* court cites approvingly, a sum is "payable" when a person "is under an obligation to pay it." *Id.* at 667. An employer is not under an obligation to pay wages as soon as they are earned, but instead at whatever point in time *after* they are earned that an employee's contract or the wage claim statute requires. *See* WIS. STAT. § 109.03 (governing when wages are payable). Moreover, Carey's unused compensatory time and sick leave are not "payable" when earned:   presumably they were earned at earlier time periods during her employment and were not payable to her until her employment terminated without her having used them.

---

[8] As the Board correctly points out, Carey's earnings were earned and some of the lump sum worker's compensation benefits accrued *after* Carey was eligible for duty disability benefits on July 13, 1998. As already noted (*see supra* para. 3), the reason Carey did not receive duty disability benefits until October was that the earnings she received in July, August, and September were offset against the amount of duty disability benefits she was otherwise entitled to.

¶ 18. Similarly, worker's compensation benefits are often not "payable" until after the time period for which the benefits provide compensation. While an employee may meet the eligibility criteria for worker's compensation for a particular month, the obligation to pay worker's compensation benefits does not arise until the employee makes a claim and the requisite procedures are followed, which may involve resolution of disputes by the Department of Workforce Development. *See* WIS. STAT. §§ 102.12–18.

¶ 19. There can be no dispute that, when the employer pays the employee his or her wages and unused compensatory time and sick leave, or when the responsible party pays the employee worker's compensation benefits, those sums are "payable" at the point in time when they are received. It is therefore a reasonable construction of the statute to deduct them when they are received.[9]

¶ 20. The Board's construction is also consistent with the purpose of WIS. STAT. § 40.65(5)(b) recognized by the court in *Coutts*. Offsetting duty disability benefits by the designated benefits and earnings when they are received "prevent[s] the simultaneous receipt of income listed in § 40.65(5)(b) and full duty disability benefits." *Coutts*, 209 Wis. 2d at 671–72.

¶ 21. Finally, the Board's construction is consistent with the *Coutts* court's reference to "contemporaneously received." Although the court does not

---

[9] Those sums may in fact be "payable" before they are received, if, for example, the employer or other responsible party delayed in paying them after the point in time at which they were obligated to pay them. However, the Board does not take the position that they should be deducted before they are received.

expressly require that the reduction occur contemporaneously with receipt, it is reasonable to read the statement as implicitly approving a reduction contemporaneous with receipt. There is, in contrast, no reasonable way to read this statement as meaning contemporaneous with the earning of compensation from employment or the accruing of benefits.

¶ 22. We conclude that Carey's proposed construction of Wis. Stat. § 40.65(5)(b)3. and 5. is not more reasonable than the Board's. As already noted, the words "earned" and "accrued" are not used in the statute, and those concepts are distinct from the concept of "payable," the term actually used in the statute. In addition, Carey's proposed construction is inconsistent with the plain language of § 40.65(5)(b)3. regarding lump sum worker's compensation payments. Carey's lump sum payments are compensation for a number of weeks prior to the receipt; nonetheless, subsec. (5)(b)3. expressly authorizes the reduction of duty disability benefits by a specified amount each month "until the lump sum amount is exhausted." This language plainly authorizes the reduction of duty disability benefits by worker's compensation benefits that accrued in preceding months, and that is what the Board did here. This method of offsetting lump sum worker's compensation benefits is inconsistent with the concept advanced by Carey—that reductions are permissible only for earnings or benefits that are earned or accrue contemporaneously with the reduction.

¶ 23. We recognize that under the Board's construction, the amount of duty disability benefits participants receive may be affected by the vagaries of when they receive the benefits or earnings listed in Wis. Stat. § 40.65(5)(b), and that participants may have no control over this timing. It appears this timing might work to a

participant's advantage or disadvantage, depending on the circumstances of the particular case. However, nothing in the language of § 40.65(5)(b) indicates the legislature intended the Board to choose a method of offset that maximizes the total of the duty disability benefits and other benefits and earnings participants receive.

¶ 24. Carey asserts that the Board's construction means that "[i]n practice . . . the income in question can be offset at least twice, once, when the disabled individual still is on her employer's payroll and the monies are being earned or benefits accrued, and then, again, when those monies or benefits are paid." She does not explain this further, and we, like the circuit court, can see no merit to this argument. Carey points to no evidence that any earnings or worker's compensation benefits she received were counted more than once to reduce her duty disability payments; and the Board's construction of WIS. STAT. § 40.65(5)(b) to require a reduction when the earnings and benefits are received does not allow for more than one reduction.

## CONCLUSION

¶ 25. We conclude the Board's construction of WIS. STAT. § 40.65(5)(b)3. and 5. under which earnings and worker's compensation benefits (subject to the lump sum provisions in subd. 3.) are offset against duty disability benefits when they are received is reasonable and comports with the purpose of the statute. We further conclude the construction proposed by Carey is not more reasonable. We therefore affirm the circuit court's order, which affirmed the Board's decision.

*By the Court.*—Order affirmed.