William W. WELTER, Daniel E. Trampe and Edward L. Bower, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE and Milwaukee Employe's Retirement System Annuity and Pension Board, Defendants-Respondents.

Court of Appeals

*No. 95–0073. Submitted on briefs August 1, 1995.—Decided December 12, 1995.*

(Also reported in 543 N.W.2d 815.)

For the plaintiffs-appellants the cause was submitted on the briefs of *Fuchs & Snow, S.C.*, with *John*

*F. Fuchs* and *Marcia A. Snow,* and *Fiorenza & Hayes, S.C.,* with Daniel J. Miske, of Milwaukee.

For the defendants-respondents the cause was submitted on the briefs of the *City of Milwaukee Attorney's Office,* with *Grant F. Langley,* and *Heidi A. Wick,* of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J. William W. Welter, Daniel E. Trampe, and Edward L. Bower, former City of Milwaukee employees receiving duty disability retirement benefits, appeal the trial court's grant of summary judgment to the City of Milwaukee and its Employe's Retirement System Annuity and Pension Board. The appellants argue that an offset reducing their duty disability benefits by the amount of benefits they receive under the Wisconsin Worker's Compensation Act and/or under the United States Social Security Act is "directly in conflict with the letter and spirit of the Wisconsin Worker's Compensation Act, as well as violative of the Supremacy Clause of the U.S. Constitution." The trial court rejected their arguments, concluding that the legislature had expressly granted the City of Milwaukee the authority to reduce duty disability pensions by amounts received under worker's compensation and social security. We affirm.

## I. BACKGROUND

The City of Milwaukee's Employe's Retirement System is a corporate entity whose Board administers a trust fund for payment of pensions, annuities, and other benefits. The retirement system was created by Chapter 396 of the Laws of 1937. The provisions of

Chapter 396 of the Laws of 1937 and subsequent amendments that shaped the Employe's Retirement Act are presently found in Chapter 36 of the Milwaukee City Charter (MCC), which governs the administration of the Employe's Retirement System.[1]

MCC § 36-05-3-a provides a duty disability retirement allowance for members who have been disabled by a duty-related injury.[2] MCC § 36-12 provides, how-

---

[1] Following the enactment of Chapter 396 in 1937, the City administered its retirement system under the mandates of Chapter 396. In 1947, however, the legislature explicitly granted the City home rule authority over Chapter 396 pension matters. *See* Laws of 1947, ch. 441. Section 31 of Chapter 441 of the Laws of 1947 (subsequently codified as MCC § 36-14), in part provided:

> For the purpose of giving to cities of the first class the largest measure of self-government with respect to pension annuity and retirement systems compatible with the constitution and general law, it is hereby declared to be the legislative policy that all future amendments and alterations to this act are matters of local affair and government and shall not be construed as an enactment of statewide concern. Cities of the first class are hereby empowered to amend or alter the provisions of this act in the manner prescribed by section 66.01 of the statutes . . . .

Thus, after 1947, when the City made revisions to the retirement system, it did so pursuant to § 66.01, STATS. Then, in 1959, Chapter 396 was codified at MCC Chapter 36. MCC § 36-12, one of the provisions at issue in this appeal, recites (with minimal modification immaterial to this case) the original language of § 13 of Chapter 396 of the Laws of 1937.

[2] MCC § 36-05-3-a in relevant part, provides:

> Any member in active service who shall become permanently and totally incapacitated for duty as a natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty shall, upon filing a request for retirement with the Board . . . be entitled to a duty disability retirement allowance . . . provided the medical council or medical panel after a medical examination of such member shall certify that such mem-

ever, for a reduction of city disability payments if members receive payments under state worker's compensation or similar laws. MCC § 36-12 states, in part:

> **Limitations on Payment of Benefits.** Any amounts which may be paid or payable under the provisions of any state worker's compensation, or similar law, to a member or to the dependents of a member on account of any disability shall be offset against and payment [sic] in lieu of any benefits payable out of funds provided by the city under the provisions of this act on account of the same disability.

The Employe's Retirement Act also provides for an offset of social security payments pursuant to MCC § 36.06-9 which stated, in part:

> In applying the provisions of this subsection the maximum duty disability allowance payable to a member participating in the coordinated plan under the provisions of s. 36-05-3 together with the member's social security benefit shall be limited to an aggregate sum of 100% of the member's final average salary.[3]

Employees applying for duty disability are required to sign one or more forms acknowledging that their worker's compensation and/or social security disability benefits will be offset against their city duty disability payments. The City then calculates its disability pay-

---

ber is mentally or physically incapacitated for further duty as a result of such service injury and such incapacity is likely to be permanent and such member should be retired.

[3] This section was amended on October 18, 1994. The amendment, however, is not relevant to this appeal.

ments to the employees, adjusting for the payments received or expected from these other sources.[4]

Welter, Trampe, and Bower brought an action for declaratory judgment challenging the City's authority

[4] In their brief to this court, the appellants summarize the methods of payment calculation:

> As to the offset of worker's compensation benefits, the City's Employe Benefits Administration, Worker's Compensation Section calculates the amounts paid or payable in worker's compensation benefits to be offset against the member[']s duty disability benefit. Next an actuary calculates the offset for any portion of the worker's compensation benefit paid after the effective date of the grant of a duty disability retirement allowance. This calculation includes interest and mortality. Finally, the ERS staff calculates the offset for the portion of worker's compensation benefits paid prior to the member[']s effective date of the grant of a duty disability retirement allowance. The Board then informs the member of the total amount of worker's compensation benefits that will be prospectively offset from his duty disability allowance.
>
> As to social security benefits, the Employe's Retirement System calculates an *assumed* social security disability award and deducts that amount of duty disability retirement allowance and the social security disability award combined that is in excess of 100% of the member's final average salary on a dollar-for-dollar basis. Each member is requested to appeal a denial of social security benefits to the hearing stage, and if social security benefits are ultimately denied at hearing, the Board makes a retroactive adjustment to the member[']s duty disability retirement allowance.

(Italics in original; citations omitted.) Under paragraph VII 7.d.1 of the Rules and Regulations of the retirement system, pensioners also have the option to have the City "[i]ssue a lump sum payment to the Employes' Retirement System equal to the total principal of the Worker's Compensation award so that no offsets are applied to their duty disability pensions."

According to the stipulated facts in this case, Welter, Trampe, and Bower had their duty disability payments calculated with consideration of various offsets, resulting in reductions of duty disability payments ranging from $32.14 per month to $522.54 per month.

to reduce their duty disability benefits by offsetting paid or payable worker's compensation payments and/or paid or payable Social Security disability benefits. The parties filed a stipulation of facts and brought simultaneous summary judgment motions.

Reviewing a grant of summary judgment, we apply the same standards as those of the trial court. *Voss v. City of Middleton*, 162 Wis. 2d 737, 748, 470 N.W.2d 625, 629 (1991). The methodology for considering summary judgment motions has often been stated, *see Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816, 820 (1987), and we need not repeat it here. Our review is *de novo. Id.* Further, interpretation of a statute or ordinance is a question of law, also subject to our *de novo* review. *Hemerley v. American Family Mut. Ins. Co.*, 127 Wis. 2d 304, 307, 379 N.W.2d 860, 862 (Ct. App. 1985).

## II. WORKER'S COMPENSATION ACT

Appellants first argue that the City's offset ordinance and practice conflict with the Wisconsin Worker's Compensation Act. Specifically, they contend that § 102.30(2), STATS., precludes any offset against worker's compensation payments. In relevant part, § 102.30(2), STATS., provides, "Liability for compensation is not affected by any insurance, contribution or other benefit due to or received by the person entitled to that compensation." The appellants argue that any reduction of the duty disability payment as a result of worker's compensation payments does indeed "affect" the "liability for compensation" in violation of § 102.30(2), STATS. The City, however, relies on its authority derived from the statutory requirement that worker's compensation payments "shall be offset

against and payable in lieu of any benefits payable out of funds provided by the city." Laws of 1937, ch. 396, § 13.

Rejecting the appellants' argument, the trial court distinguished between reducing state worker's compensation and reducing city duty disability payments. Concluding that the legislature had expressly granted the City the authority to do the latter, the trial court explained:

> [i]t is the *duty disability* payments to plaintiffs that are being reduced, *not* plaintiffs' worker's compensation payments. Unquestionably, under Wisconsin law, it would be illegal for an employer to reduce worker's compensation awards by other sums an employee is eligible to receive. The operative effect of Milwaukee City Charter 36-12 and 36-06-09 are [sic] that duty disability allowances are a supplement to worker's compensation and/or Social Security disability benefits.
>
> Equally without question is the fact that if the court were to adopt plaintiffs' argument, City of Milwaukee workers injured on the job would be able to collect twice—and possibly more—for the same injury. Wage loss systems exist to compensate injured employees by ensuring their standard of living is similar to the standard they enjoyed before being injured. Wage loss systems do not exist to reward injured employees with benefits exceeding 100% of their former salaries. Such a result would be inequitable and contrary to public policy.

When interpreting a statute, we first look to the language of the statute itself. *City of Milwaukee v. Dyson*, 141 Wis. 2d 108, 110, 413 N.W.2d 660, 661 (1987). If its language is unambiguous we may not

resort to extrinsic aids for statutory construction. *Id.* The language of this statute is unambiguous and its meaning is clear. As the trial court correctly concluded, the legislature provided for exactly the kind of duty disability reduction that the City has implemented in its ordinance. Section 13 of Chapter 396 of the Laws of 1937, in relevant part, stated:

> LIMITATIONS ON PAYMENT OF BENEFIT. . . . Any amounts which may be paid or payable under the provisions of any state workmen's compensation or similar law to a member or to the dependents of a member on account of any disability or death shall be offset against and payable in lieu of any benefits payable out of funds provided by the city under the provisions of this act on account of the same disability or death.

Indeed, the statute mandated the City's reduction of payments—the worker's compensation payment "*shall* be offset against and payable in lieu of any benefits payable out of funds provided by the city." (Emphasis added.)

██ The appellants argue that § 102.30(2), STATS., precludes the very reduction that § 13 required. We disagree. Section 102.30(2), states:

> An employer may provide by mutual or other insurance, by arrangement with employes or otherwise, for the payment to those employes, their families, their dependents or their representatives, of sick, accident or death benefits in addition to the compensation provided under this chapter. Liability for compensation is not affected by any insurance, contribution or other benefit due to or received by the person entitled to that compensation.

The appellants repeatedly invoke this section but quote only its last sentence. Thus they ignore the context that clarifies that this statute addresses employers' "[l]iability for compensation"[5] payments under the Worker's Compensation Act—i.e., the obligation of the employer to contribute to the state worker's compensation fund regardless of whether the employer also provides other insurance. Therefore, § 102.30(2) does not relate to the offset issue and does not foreclose the City from reducing its duty disability payments.[6]

The appellants present several scenarios to show how, under certain hypothetical circumstances, the "operative effect" of the offset could be a reduction in worker's compensation benefits or, at the very least, a requirement that employees "pay for their own state worker's compensation" by losing some of their disability payments. The appellants also contend that there should not be an offset because worker's compensation payments serve purposes that are separate from and in addition to those served by duty disability payments.[7]

---

[5] Under § 102.01(2)(am), STATS., "[c]ompensation' means worker's compensation."

[6] As the City also points out, § 102.30(2), STATS., has existed since enactment of the original Worker's Compensation Act in 1911. Appellants have offered nothing to suggest that in 1937 the legislature enacted the offset provision in conflict with the existing worker's compensation law.

[7] The Supreme Court was not persuaded by a similar argument in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) (concluding that pension integration under ERISA with worker's compensation benefits was lawful). The Court concluded that offsets are not precluded simply because there may not be "an identity between the purposes of pension payments and the purposes of the other integrated benefits." *Id.* at 519.

The appellants present intriguing arguments and compelling public policy concerns.[8] The scenarios they offer, however, are dissimilar from those presented in this appeal. Here, the City's reductions of duty disability payments for the three appellants are offsets against permanent partial disability benefits under worker's compensation (and, in Bower's case, also against social security benefits). The City explains that although MCC § 36-12 provides that "any" amounts paid or payable under the Worker's Compensation Act will be offset, "only those amounts paid for permanent partial disability are actually offset against the duty retirement allowance." Whether the appellants' arguments would prevail under other circumstances or in the hypothetical scenarios they present are issues beyond the facts of this appeal.

■

Appellants also argue that the legislature, by amending § 102.07, STATS., in 1955, rejected the offset authority. Until 1955, § 102.07(2) in part provided:

> Any policeman or fireman claiming compensation shall have deducted from such compensation any sum which such policeman or fireman may receive from any pension or other benefit fund to which the municipality may contribute.

---

[8] In addition to the arguments, we note MCC § 36-13-1, which states:

LEGISLATIVE POLICY. Employes have been attracted to and have remained in the public service in cities of the first class despite the prevailing higher wages in other employments because of the deferred compensation for their services promised to them in the form of retirement annuities and death benefits in the retirement system to which they have been admitted as contributing members. The purpose of this act is to strengthen the public service in cities of the first class by establishing the security of such retirement and death benefits.

Section 102.07(2), STATS. (1953). In 1955 the legislature deleted this language. Appellants, however, have offered no legislative history or other authority to explain the reason for the revision or to suggest that it somehow related to any legislative intent to revoke the offset authority of Chapter 396. We will not assume such revocation or repeal by implication. *See State v. Struzik*, 113 Wis. 2d 245, 248, 335 N.W.2d 432, 433 (Ct. App. 1983).

## III. SOCIAL SECURITY ACT

The appellants also argue that any reduction of the city duty disability payments by virtue of the receipt of social security payments violates the Supremacy Clause of the United States Constitution. *See* U.S. CONST., art. VI. The Supremacy Clause provides:

> This constitution, and the laws of the United States which shall be made in pursuance thereof . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby any thing in the constitution or laws of any state to the contrary notwithstanding.

The appellants thus contend that payments under the Social Security Act, 42 U.S.C. § 401, *et seq.*, must not result in reduced payments by the City. Appellants rely on *Rose v. Arkansas State Police*, 479 U.S. 1 (1986) (per curiam), in which the United States Supreme Court prohibited the State of Arkansas from applying a state statute that reduced state death benefits to the widow of an Arkansas State Trooper by virtue of federal death benefits she also was receiving. The Court concluded that "Congress plainly intended to give supplemental benefits to the survivors, not to assist the States by subsidizing their benefit programs," *id.* at 4, and,

therefore, that the Arkansas statute violated the Supremacy Clause.

*Rose*, however, is distinguishable. The federal statute specifically provided that the federal death benefit " 'shall be in addition to any other benefit that may be due from any other source.' " *Id.* (emphasis omitted). Thus, the Arkansas statute unlawfully authorized precisely the reduction that the federal act prohibited. By contrast, however, unlike the federal Public Safety Officers' Death Benefits Act at issue in *Rose*, nothing in the Social Security Act prohibits the City from offsetting duty disability pension payments by social security disability payments.

█

The appellants argue that because the Social Security Act specifically sets forth items for which a reduction of insurance benefits may be taken, *see* 42 U.S.C. § 403, and because offsets such as those involved in this case are not specified, the offsets are precluded. The City counters, however, that no language in the Social Security Act prohibits the City from offsetting duty pension benefits for social security disability payments. The United States Supreme Court confronted a similar circumstance in *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504 (1981) (concluding that pension integration under ERISA with worker's compensation benefits was lawful).

In *Alessi*, retirees argued, in part, "that the workers' compensation offset provisions of their pension plans contravene ERISA's nonforfeiture provisions," *id.* at 509, "that no vested benefits may be forfeited except as expressly provided in [29 U.S.C.] § 1053," *id.* at 511, and "that offsets based on workers' compensation fall into none of those express exceptions." *Id.* To the extent that the Court agreed, it did so specifically

because "§ 1053(a) prohibits forfeitures of vested rights except as expressly provided in 1053(a)(3), and the challenged workers' compensation offsets are not among those permitted in that section." *Id.* The Social Security Act includes no comparable prohibition and, indeed, in *Alessi*, the Court, allowing offsets, specifically noted that "[s]uch offsets [for worker's compensation awards] work much like the integration of pension benefits with Social Security." *Id.* at 516.

In *Alessi*, the Supreme Court recognized the propriety of "promoting a system of private pensions by giving employers avenues for cutting the cost of their pension obligations." *Id.* at 517. Writing for a unanimous Court,[9] Justice Marshall explained:

> It is particularly pertinent for our purposes that Congress did not prohibit "integration," a calculation practice under which benefit levels are determined by combining pension funds with other income streams available to the retired employees. Through integration, each income stream contributes for calculation purposes to the total benefit pool to be distributed to all the retired employees, even if the nonpension funds are available only to a subgroup of the employees. The pension funds are thus integrated with the funds from other income maintenance programs, such as Social Security, and the pension benefit level is determined on the basis of the entire pool of funds. Under this practice, an individual employee's eligibility for Social Security would advantage all participants in his private pension plan, for the addition of his anticipated Social Security payments to the total benefit pool would permit a higher average pension payout for each participant. The employees as a group profit

---

[9] Justice Brennan did not participate in the decision. *Alessi*, 451 U.S. at 526.

from that higher pension level, although an individual employee may reach that level by a combination of payments from the pension fund and payments from the other income maintenance source. In addition, integration allows the employer to attain the selected pension level by drawing on the other resources, which, like Social Security, also depend on employer contributions.

*Id.* at 514. Thus, the Court acknowledged that Congress had struggled with the possibility that promoting pension programs by allowing offsets could seem to result both in disadvantages for individual retirees and overall advantages for all employees ultimately eligible for benefits. *See id.* at 514-517. In *Alessi*, as in the instant case, the legislative call may have been a close one, but "[o]ur judicial function is not to second-guess the policy decision of the legislature, no matter how appealing we may find contrary rationales." *Id.* at 521.

Thus, we conclude that the City has authority to offset its duty disability payments against state worker's compensation and federal social security payments. The trial court correctly granted summary judgment.[10]

---

[10] Because we conclude that the City's offset is consistent with the authority granted by the legislature, we need not address the appellants' additional argument that the City exceeded its "home-rule" authority by enacting MCC § 36-12-1. As the City has argued, whether or not it could have relied on its home rule authority to act, it is authorized to implement the offset consistent with the legislative scheme originally set forth in Chapter 396 of the Laws of 1937. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).