COURT OF APPEALS
DECISION
DATED AND FILED

February 17, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.   **2023AP301**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV1965

IN COURT OF APPEALS
DISTRICT I

---

MILWAUKEE POLICE ASSOCIATION AND KURT J. LACINA,

PLAINTIFFS-RESPONDENTS,

V.

CITY OF MILWAUKEE AND CITY OF MILWAUKEE EMPLOYEES RETIREMENT SYSTEM ANNUITY PENSION BOARD,

DEFENDANTS-APPELLANTS.

---

APPEAL from an order of the circuit court for Milwaukee County: PEDRO A. COLÓN, Judge. *Affirmed.*

Before White, C.J., Donald, and Geenen, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The City of Milwaukee and City of Milwaukee Employees Retirement System Annuity Pension Board (collectively, the City) appeal from the order granting summary and declaratory judgment in favor of the Milwaukee Police Association (MPA) and Kurt J. Lacina. The City argues that the circuit court misinterpreted the Milwaukee City Charter regarding the offset of duty disability payments. Upon review, we affirm.

## BACKGROUND

¶2 Lacina was hired as a Milwaukee Police Department (MPD) officer in 1999. On January 21, 2008, Lacina suffered a broken back and neck in a duty-related police squad accident. After non-surgical treatments did not solve his back and neck issues, Lacina underwent two spinal surgeries in 2008 and 2009, after an exhaustive course of nonoperative care and therapy was unsuccessful in alleviating his lumbar back pain. Lacina was off work for approximately one year, but returned to limited duty at MPD in 2009. In July 2009, Lacina applied for Duty Disability Retirement (DDR) benefits for the physical injuries he suffered in the accident; however, those benefits were denied in July 2010.

¶3 Lacina applied for benefits from the State of Wisconsin Department of Workforce Development (DWD) Worker's Compensation Division for his physical injuries arising out of the accident, resulting in a hearing.[1] The Administrative Law Judge (ALJ) found Lacina had a 20% permanent partial disability to his cervical and lumbar spine. In the March 2, 2011 order, the ALJ

---

[1] A "finding of permanent partial disability … must be based on a consideration of both factors loss of bodily function and loss of earning capacity." *Pfister & Vogel Tanning Co. v. Department of Indus., Lab. & Hum. Rels.*, 86 Wis. 2d 522, 529, 273 N.W.2d 293 (1979).

determined Lacina should be compensated $52,400 in Permanent Partial Disability (PPD) benefits for the loss of function associated with his physical injuries from the accident. After the City paid a lump sum of $29,441.96, the City was ordered to pay Lacina $1,135.33 per month, until the remaining $12,156.80 was paid.

¶4      On March 15, 2011, Lacina was involved in another squad accident resulting in a third spinal surgery. Although Lacina returned to duty, in June 2012, he applied for DDR benefits for mental stress due to the significant depression, psychological trauma, and cognitive problems stemming from the medication associated with the failed spinal surgeries.

¶5      The City of Milwaukee Employees' Retirement System (ERS) granted Lacina's mental stress condition DDR claim for a 75% benefit, after examination and investigation by the medical panel.[2] Dr. James Winston, a psychiatrist, was one of the physicians on the medical panel reviewing his DDR application. In his 2012 opinion, Dr. Winston discussed Lacina's history of back and neck injury treatments and spinal surgeries; his diagnoses of major depression, anxiety, and narcotic dependence; and different medication and treatment options that were tried with limited success. Dr. Winston opined that Lacina had "chronic suicidal ideation from his pain and pain medications," and that his "clinical depression [was] related to both [on-duty] accidents."

¶6      In 2016, upon Lacina's request, ERS verified that the worker's compensation benefits the City provided for Lacina's physical injuries would not

---

[2] Lacina's DDR benefits for the mental stress condition were approved in August 2013; ERS set an effective retirement date in March 2013, and payments began September 2013.

be offset from his mental stress disability benefits. The offset provision in the Milwaukee City Charter ordinances that govern ERS provides:

> Any amounts which may be paid or payable under the provisions of any state worker's compensation, or similar law, to a member or to the dependents of a member on account of any disability shall be offset against and payment in lieu of any benefits payable out of funds provided by the city under the provisions of this act on account of the same disability.

MILWAUKEE, WI CITY CHARTER § 36-12 (hereinafter MCC).

¶7      In October 2018, Lacina applied for an enhanced 90% DDR benefit. After an examination, the medical panel recommended Lacina be granted the enhanced benefit. Dr. Winston again served on the medical panel. He consulted with Lacina's orthopedic surgeon to understand his physical limitations; in letters to ERS, both doctors opined that Lacina's chronic pain and major depressive disorder were closely related and could not be separated.

¶8      ERS then sought review of whether the prior offset determination was correct. The City Attorney's Office issued a letter in April 2020 opining that a MCC § 36-12 offset should apply to Lacina's previously received worker's compensation benefits because Lacina's mental injuries were inextricably linked to his duty-related physical injury.

¶9      In June 2020, ERS notified Lacina that it sought a $52,400 offset for the worker's compensation payments because his mental stress disabilities were

based on physical injuries for which he received worker's compensation PPD payments. Lacina's monthly DDR payments were reduced by $61.50.[3]

¶10 In March 2022, Lacina and the MPA filed the underlying action seeking declaratory judgment that the City's ability to offset worker's compensation payment was limited to those benefits which are "payable," as opposed to having been "paid" previously, and those provided for the same injury, as opposed to the same date of injury. In October 2022, Lacina moved for summary and declaratory judgment on these claims. The circuit court granted Lacina's motion in January 2023. The City appeals.

## DISCUSSION

¶11 The City argues that the circuit court misinterpreted the offset provision, MCC § 36-12, when it concluded that Lacina's DDR benefits should not be offset by the PPD worker's compensation payments paid to him before his DDR benefits commenced. The circuit court ordered a declaratory and summary judgment premised on the court's interpretation of the offset provision and its application.

¶12 "A party is entitled to summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." ***Olson v. Town of Cottage Grove***, 2008 WI 51, ¶34, 309 Wis. 2d 365, 749 N.W.2d 211. We independently review an order granting summary judgment. ***Id.***

---

[3] Lacina had the option to repay the offset in a lump sum; however, the default option was monthly deduction from his DDR benefit payment.

A decision to grant or deny declaratory relief under WIS. STAT. § 806.04 (2023-24)[4] falls within the discretion of the circuit court. *Olson*, 309 Wis. 2d 365, ¶35.

¶13     Here, our inquiry rests on the interpretation of MCC § 36-12.  There are no disputed material facts, and Lacina is entitled to judgment on his claim if we conclude that the offset for worker's compensation benefits does not apply. Alternatively, the City is entitled to judgment if we conclude the offset provision does apply.

¶14     The interpretation and application of a statute or a municipal ordinance is a question of law that we review independently.  *Milwaukee Police Ass'n v. Hegerty*, 2005 WI 28, ¶11, 279 Wis. 2d 150, 693 N.W.2d 738.  The purpose of statutory interpretation is to "determine what the statute means so that it may be given its full, proper, and intended effect."  *Clean Wis., Inc. v. DNR*, 2021 WI 71, ¶15, 398 Wis. 2d 386, 961 N.W.2d 346 (quoting *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶44, 271 Wis. 2d 633, 681 N.W.2d 110). "[S]tatutory interpretation begins and is usually complete only after a full consideration of all relevant intrinsic sources"—that is, the text, context, and structure of the statute.  *Service Emps. Int'l Union Healthcare Wis. v. Wisconsin Emp. Rels. Comm'n*, 2025 WI 29, ¶¶10, 12, 416 Wis. 2d 688, 22 N.W.3d 876.

¶15     Lacina and the City differ in their interpretation of MCC § 36-12 in two ways.  First, whether the provision, "[a]ny amounts which may be paid or payable under the provisions of any state worker's compensation, or similar law," refers only to future worker's compensation payments, and would not require

---

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

offset for worker's compensation payments made before the effective date of duty disability retirement. Second, whether the provision, "on account of the same disability," means that his DDR benefits granted for a mental stress disability would be for the "same disability" as the PPD worker's compensation benefits granted for his physical injuries.

¶16 We begin with the dispute over the construction of "any amounts which may be paid or payable." Lacina argues that it clearly refers to the future tense and only requires offset for worker's compensation benefits that have not been paid as of the effective date of the DDR benefit. The circuit court ruled that the critical phrase was "may be" and that "[t]he phrase 'paid or payable,' standing alone, would encompass both past and future payments."

¶17 As we examine the language of the ordinance, we must consider the words in context—here "may" and "be" are grammatically tied and we analyze them together. *See Kalal*, 271 Wis. 2d 633, ¶46. "May" is a modal auxiliary verb, which is a verb typically used with another verb to express ideas such as "permission, ability, prediction, possibility, or necessity." *Modal Verb*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/modal%20verb (last visited February 5, 2026). The combination of auxiliary or helping verbs can indicate verb tense, passive voice, or form a question. *Helping Verb*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/helping%20verb (last visited February 5, 2026); *Passive*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/passive (last visited February 5, 2026).

¶18 Here, the clause "any amounts which may be paid or payable" is stated in the passive voice, as indicated by the use of the modal verb "may," the

helping verb "be," and the past participle form of the verb "pay." ***Id.***[5] A past participle "typically expresses completed action," and is "traditionally used in English in the formation of perfect tenses in the active voice and of all tenses in the passive voice." *Past participle*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/past%20participle (last visited February 5, 2026).

¶19 The City argues that the past participle supports that the offset provision applies to previously paid amounts. However, grammatically, it has not shown this to be true. Typically, in the passive voice, a modal verb plus "be" plus the past participle of a verb indicates present or future tense. *Verbs, Explained: A Guide to Tenses and Types*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/grammar/auxiliary-transitive-intransitive-modal-and-other-types-of-verbs (last visited February 5, 2026). Past tense forms would be based on past tense conjugations of "be" or "have;" for example: "were paid," "were being paid" and "had been paid." *Past tense*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/past%20tense (last visited February 5, 2026). We have not reviewed a grammatical rule proving that "amounts which may be paid…" includes or requires a past tense construction of the clause.

¶20 To the extent that the City argues that "may be paid" refers to worker's compensation payments that are occurring (or may occur) at the same time that DDR benefits are being made, we agree that "may be paid" is not

---

[5] "The most common passive structure is be + -ed [past participle] form" of the verb. *Passive Forms*, CAMBRIDGE DICTIONARY, https://dictionary.cambridge.org/us/grammar/british-grammar/passive-forms (last visited February 5, 2026).

exclusively future tense. However, the record reflects that the City did not seek to offset current or ongoing worker's compensation payments that Lacina was receiving from his DDR benefit. The record reflects that the worker's compensation payments were complete and the total amount awarded was satisfied before Lacina began any DDR benefit payments.

¶21 We reject the City's argument that *Welter v. City of Milwaukee*, 198 Wis. 2d 636, 543 N.W.2d 815 (Ct. App. 1995) resolves this question. In *Welter*, the appellants protested "an offset reducing their duty disability benefits by the amount of benefits they receive" for worker's compensation benefits. *Id.* at 639. The facts described a continuous receipt of benefits and the offset to those benefits; therefore, the reference that the City adjusted "for the payments received or expected" merely reflects the ongoing nature of the benefits and the offset. *Id.* at 642.

¶22 The language in MCC § 36-12 covers the possibility of an offset, using "may" to denote an uncertainty about whether the recipient is receiving or might receive worker's compensation benefits. When we examine the full text of the offset provision, we see an additional use of the phrase "paid or payable." We generally do not ascribe different meanings to the same word as it appears in a statute or rule, "unless the context clearly requires such an approach." *General Castings Corp. v. Winstead*, 156 Wis. 2d 752, 759, 457 N.W.2d 557 (Ct. App. 1990). Here, the offset provision's final sentence states:

> Notwithstanding the foregoing, amounts paid or payable as social security disability benefits shall not be offset against the benefits payable by the city under the provisions of this act on account of the same disability to members in the coordinated plan.

MCC § 36-12. Thus, because the rule prohibits an offset for Social Security Disability payments at any time, the rule does not need to address uncertainty or timing of other payments. Lacina argues that this difference in treatment shows that the City could have clearly described past benefits received and it did not. The City argues that this is a distinction without a difference.

¶23 The City asserts that the Pension Board Rules clarify the situation. "Any amounts paid to a duty disability retiree, under the Worker's Compensation Law, prior to the effective date of such duty disability as approved by the Board, and on account of the same disability, shall be offset against the amounts due from the ERS…" ANNUITY AND PENSION BOARD OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF MILWAUKEE RULES AND REGULATION, Rule XVII(E)(3) (hereinafter, BOARD RULES). Although that rule does support applying the offset for previously paid worker's compensation benefits, ERS and its Pension Board operate under the authority conferred by the City Charter, and it cannot make a rule that exceeds that authority. *See **Conway v. Board of Police & Fire Comm'rs of City of Madison***, 2003 WI 53, ¶28, 262 Wis. 2d 1, 662 N.W.2d 335 ("An administrative agency has only those powers that are expressly conferred or necessarily implied from the statutory provisions under which it operates."); MCC § 36-15-6 ("Subject to the limitations of this act … the board shall … establish rules and regulations … in order to carry out the provisions of this act"); BOARD RULES I(A) ("The Board is governed by the provisions of Chapter 36 of the Milwaukee City Charter"). Therefore, we conclude the BOARD RULES are not dispositive. While the City may disagree, we paraphrase our state supreme court when it addressed the construction of a similar state statute, "the authority rests with the [City], rather than this court, to change the meaning of the [offset

10

provision].” ***Coutts v. Wisconsin Ret. Bd.***, 209 Wis. 2d 655, 673, 562 N.W.2d 917 (1997).[6] This court can only interpret the ordinances.

¶24     Ultimately, we conclude that the language of the statute requires an offset to DDR benefits for ongoing, concurrent, and future payments of worker's compensation payments.  It does not require an offset for worker's compensation benefits previously paid in the past.

¶25     We now turn to the second argument—that an offset is required only for worker's compensation benefits paid for the "same disability."  *See* MCC § 36-12.  The City argues that all of Lacina's health problems arise from the injuries he suffered in the 2008 squad crash.  It asserts that the resulting back and neck injuries are a single disability; and the medical and surgical treatments did not restore his functionality, leading to chronic pain, severe depression, cognitive issues, and narcotic dependance from the pain relief medications prescribed to him.

¶26     The City argues that the "de facto definition" of disability in MCC ch. 36 is broad, and therefore, the definition of "same disability" should be interpreted broadly.  It relies upon MCC § 36-05-3-a, which states that DDR

---

[6] Our supreme court analyzed a similar question of statutory offsets to duty disability benefits for protective occupation participants covered by the public employee trust fund, governed by WIS. STAT. ch. 40.  ***Coutts v. Wisconsin Ret. Bd.***, 209 Wis. 2d 655, 663, 562 N.W.2d 917 (1997).  Under WIS. STAT. § 40.65(5)(b)3, a participant's monthly benefit was reduced by "[a]ny worker's compensation benefit payable to the participant…."  The ***Coutts*** court held that "payable" referred only to future worker's compensation benefit payments, not those "paid prior to the commencement of duty disability payments."  *Id.*, 209 Wis. 2d at 673.  It barred offset for benefits that were paid before the duty disability became effective.  *Id.*  We reject the City's argument that ***Coutts*** stands for the proposition that using both paid and payable is temporally all inclusive to cover existing and future payments.  The ***Coutts*** court did not address an all inclusive timeframe, but only distinguished the terms.  *Id.* at 668 ("It is axiomatic that a sum which is 'paid' is no longer 'payable.'").

benefits will be awarded to a member in active service who "shall become permanently and totally incapacitated for duty as the natural and proximate result of an injury occurring at some definite time and place while in the actual performance of duty[.]" The City argues that the duty disability is premised on an incapacity and a relation to a work-related injury, not on a specific condition or diagnosis.

¶27 Lacina argues that his DDR benefits were approved for a mental stress disorder and that his physical injuries are a separate issue, even if both arose from the first accident. Lacina argues that a major distinguishing factor between his rejected 2009 DDR application based on physical injuries and his approved 2012 DDR application based on his mental injuries was his second on-duty squad accident, in March 2011. The City argues that only the 2008 accident was considered as a basis of his DDR benefits; however, the record reflects that the ERS-authored letter approving Lacina's DDR benefits stated that he "applied for Ordinary and Duty Disability retirement as it relates to injuries/illness that occurred on January 21, 2008 [the first accident] and March 15, 2011 [the second accident]."

¶28 Even if we focus on the 2008 accident, which was a basis for both DDR applications and the PPD benefits, the fact that two different injuries arose from the same accident is not dispositive to the question of what constitutes the "same disability." The City acknowledges, and the record includes, an opinion from the City Attorney's Office clarifying the application of offset in an earlier, unrelated disability application involving another participant. In that matter, a participant was certified as "totally and permanently disabled as a result of psychological problems caused by the craniocerebral [brain] injury [he] suffered" in the accident. However, he also received worker's compensation benefits for

disfigurement based on face and body scarring resulting from the burns he suffered in that same accident. The City Attorney's Office opined that an offset would not apply because the two benefits were not paid for the same disability— one benefit was paid for psychological problems caused by the brain injury, while the other benefit was paid for the physical and psychological trauma caused by the burns. As the City points out, the opinion noted that the conclusion would be different if the DDR benefits had been based on psychological problems resulting from both the craniocerebral injury and the disfigurement.

¶29 Although the City suggests that the connection between Lacina's physical and mental conditions was new information requiring a review of the offset provision application, this is not clearly established in the record. Instead, the record reflects that Lacina's pain and depression were already present and their correlation established when his DDR benefits for a mental stress disability was approved. In the 2012 DDR application materials, Dr. Winston's psychiatric evaluation discussed Lacina's severe, chronic pain that incapacitated him, created a high suicide risk, and exacerbated his depression. In 2019 for the enhanced benefit application, Dr. Winston opined that "Lacina's chronic pain and depression go hand in hand. They can't be separated in determining his disability. The chronic pain exacerbates his depression often leading to suicidal ideation. His depression makes it more difficult to treat his pain as well."[7] We note that when it approved Lacina's DDR benefits in 2012, the City had the records of Lacina's

---

[7] We acknowledge that Lacina's orthopedic surgeon also submitted a letter in 2019 in which he discussed Lacina's physical injuries as well as chronic pain and how his depression made "pain management more complex." The discussion of Lacina's physical injuries does not change our analysis.

2009 DDR application for physical injuries and the PPD worker's compensation benefits for his loss of function due to physical injuries.

¶30     We consider the City to contemplate the issue of pain too narrowly. By definition, pain is both physical and mental. Pain is defined as (1) "a localized or generalized unpleasant bodily sensation or complex of sensations that causes mild to severe physical discomfort and emotional distress and typically results from bodily disorder" and (2) "mental or emotional distress or suffering." *Pain*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary /pain (last visited Dec. 21, 2025). The descriptions of Lacina's pain in the record do not exclusively refer to bodily sensation or discomfort, but emotional distress and pain as an exacerbating and amplifying factor of depression.

¶31     We conclude that Lacina's mental stress condition was caused by two work-related injuries, each from an on-duty squad accident, and that condition resulted in him being permanently and totally incapacitated for duty for MPD. Although one of the accidents also led to PPD worker's compensation benefits for loss of function due to physical back injuries, the shared origin does not establish

this was the "same disability" for purposes of MCC § 36-12. Therefore, we affirm the circuit court's order that the offset does not apply to Lacina's DDR benefits.[8]

## CONCLUSION

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[8] We also consider, but do not reach, whether equitable estoppel would bar the City from applying the offset. "The elements of equitable estoppel are: (1) action or non-action, (2) on the part of one against whom estoppel is asserted, (3) which induces reasonable reliance thereon by the other, either in action or non-action, and (4) which is to his or her detriment." *Milas v. Labor Ass'n of Wis., Inc.*, 214 Wis. 2d 1, 11-12, 571 N.W.2d 656 (1997). The elements of estoppel are reasonable to consider: the City actively asserted to Lacina that the offset would not apply, an opinion which induced reasonable reliance by Lacina, and the City is now changing its position. Applying the offset reduces Lacina's monthly DDR benefits, which is to his detriment. Although the City argues ERS was mistaken in 2016 when it assured Lacina that the offset did not apply, the information about the impact of pain on Lacina's mental state was known from the time of his 2012 DDR application approval. Therefore, the City appears to be making a policy change in the guise of a change in facts and circumstances.